THACHER v. TRANSIT CONST. CO.

(District Court, S. D. New York. January 8, 1916.)

No. 12–302.

1. PATENTS ☞328—CONSTRUCTION—INFRINGEMENT—IMPROVEMENT IN CONCRETE ARCHES.

The Thacher patent, No. 617,615, for an improvement in concrete arches consisting of a combination, with abutments and a concrete arch spanning the intervening space, of a series of metal bars, in pairs, *held* limited by the prior art, the proceedings in the Patent Office, and the self-imposed limitations in the patent and the claims, to a combination in which the bars of each pair are physically and mechanically independent of each other, and, as so limited, not infringed.

2. PATENTS ☞112—CONCLUSIVENESS OF PATENT.

As patents are procured ex parte the public is not bound by them, but the patentees are.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 162–165; Dec. Dig. ☞112.]

3. PATENTS ☞112—PROCEEDINGS IN PATENT OFFICE—CONCLUSIVENESS.

Where the Patent Office repeatedly rejected the claims in an application for a patent on the ground that they conflicted with a prior patent unless limited, and the applicant, instead of appealing from the decision of the examiner rejecting the application, amended the claims to contain the necessary limitation, he was bound by such decision, whether it was right or wrong.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 162–165; Dec. Dig. ☞112.]

4. PATENTS ☞165—LIMITATION OF CLAIMS—OPERATION AND EFFECT OF CLAIMS.

Self-imposed limitations in the claims of a patent preclude the patentee from showing that the invention is broader than his claims, and if it is broader he is deemed to have surrendered the surplus to the public.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 241; Dec. Dig. ☞165.]

In Equity. Suit by Edwin Thacher against the Transit Construction Company. Bill dismissed.

A. Alexander Thomas, of New York City, for plaintiff.

E. Clarkson Seward, of New York City, for defendant.

THOMAS, District Judge. This case arises on final hearing on pleadings and proofs, wherein the bill of complaint charges infringement of letters patent of the United States, No. 617,615, issued to Edwin Thacher on January 10, 1899, for new and useful improvements in concrete arches. The bill asks for an injunction and an accounting. The defense is that the patent, if construed broadly, so as to include the defendant's structure, lacks patentable novelty, in view of the prior art, and if strictly construed, as the defendant insists it should be by reason of the prior art, the proceedings in the Patent Office and the self-imposed limitations in the patent and the claims, it is not infringed.

[1] The invention, as stated in the specification, has for its object—

"an improved arch structure in which iron or steel bars are imbedded in concrete near the outer and inner surfaces of the arch in such a manner as to

assist the concrete in resisting the thrusts and bending moments to which the arch is subjected."

The specification then goes on to state that by the invention the patentee provides:

"First, for an effective connection between the bars and the concrete, employing lugs, dowels, bolts, or rivets, which pass through the bars and project into the concrete, in which they are imbedded, and thereby reinforce the adhesion between the metal and the concrete and prevent any end movement of the bar through the concrete, so that the complete crushing or shearing of the concrete must take place before a separation can be effected; second, I employ bars of such a form that they can be readily and cheaply spliced, if a greater length of bar is required than that which can be conveniently rolled or shipped; third, I provide bars that can be manufactured at a small cost and as a standard or stock article, and can be readily bent, when used, to the curve of the arch into which they are to enter."

The claims alleged to be infringed are the first and third, which are as follows:

"1. The combination with abutments, and a concrete arch spanning the intervening space, or a series of metal bars, in pairs, one bar of each pair above the other, near the intrados and extrados of the arch, and extending well into the abutments, each bar of a pair being independent of the other, substantially as described."

"3. The combination with abutments, and a concrete arch spanning the space between the abutments, of a series of metal bars in pairs, one bar of each pair above the other bar, near the extrados and intrados of the arch, each bar of the pair being independent of the other and one bar of each pair extending well into the abutment, substantially as described."

The third claim is distinguished from the first only in the fact that the latter requires that one bar of each pair shall extend into the abutments.

The prior art relied upon by the defendant is the Milliken patent, No. 545,301, issued August 27, 1895, the object of which is to provide in the construction of arches, partitions, floors, etc., a combination of cement and concrete with wrought or sheet iron which will develop the full strength of all the materials. The Milliken patent shows every element of the patent in suit, save that in the Milliken patent *the upper and lower bars are connected* by means of metal work, whereas in the patent in suit each bar of a pair is *independent of the other*. This independence clearly means a physical and mechanical independence of the bars, which are separate and disconnected with each other. Thus at line 94 of page 1 of the specification the patentee says:

"The use of the double bars enables me to not only bend them at the time they are required for use to any desired arc of a circle, but enables me to bend them so that the different members of each pair are differently arched, and, furthermore, it enables me to completely imbed the lowermost member of the pair before the uppermost member is placed."

[2, 3] Moreover, the proceedings in the Patent Office preceding the issue of the patent in suit confirmed the defendant's contention that it was the feature of physical and mechanical independence or severance which led the Patent Office to allow the patent. The claims presented in the original application, and subsequently in the prosecution of the claim, were repeatedly rejected by the Patent Office, and the Milliken.

patent was cited as a reference, and the patent was finally allowed only when the claims were put in their present form with the limitation in each claim of "each bar of a pair being independent of the other." I cannot accede to the plaintiff's contention that this was a broadening of the claims. On the contrary, I hold that it was not. It was manifestly narrower, and was accepted by the patentee as a condition precedent to the grant of the patent.

The patentee now urges that, because of the incompetence of the solicitor who first attended to his application (not his present solicitor), he should not be bound by the conduct of the case in the Patent Office. The answer to that proposition is that, as patents are procured ex parte, the public is not bound by them, but the patentees are. Keystone Bridge Co. v. Phœnix Iron Co., 95 U. S. 274, 279, 24 L. Ed. 344. The patentee had an opportunity to appeal from the decision of the examiner rejecting his application and his claims, but he did not. He is therefore bound by it, and must be held to have surrendered what he thus conceded, and it is immaterial whether the Patent Office was right or wrong in rejecting the original claims. Sargent v. Hall Safe & Lock Co., 114 U. S. 63, 86, 5 Sup. Ct. 1021, 29 L. Ed. 67; Shepard v. Carrigan, 116 U. S. 593, 598, 6 Sup. Ct. 493, 29 L. Ed. 723; Roemer v. Peddie, 132 U. S. 313, 317, 10 Sup. Ct. 98, 33 L. Ed. 382; Knapp v. Morss, 150 U. S. 221, 224, 14 Sup. Ct. 81, 37 L. Ed. 1059; Morgan Envelope Co. v. Albany Paper Co., 152 U. S. 425, 429, 14 Sup. Ct. 627, 38 L. Ed. 500.

[4] Furthermore, the patentee must be presumed to have meant what he said. He has described a particular construction and in his claim he has stated that it is this particular construction upon which he desired to secure a monopoly. Such self-imposed limitations are always recognized as precluding a patentee from showing that the invention is broader than his claims; and, if broader, he must be deemed to have surrendered the surplus to the public. Railroad Company v. Mellon, 104 U. S. 112, 119, 26 L. Ed. 639; White v. Dunbar, 119 U. S. 47, 51, 52, 7 Sup. Ct. 72, 30 L. Ed. 303; McClain v. Ortmayer, 141 U. S. 419, 12 Sup. Ct. 76, 35 L. Ed. 800. This proposition was clearly stated in White v. Dunbar, supra, where the court said:

"Some persons seem to suppose that a claim in a patent is like a nose of wax, which may be turned and twisted in any direction, by merely referring to the specification, so as to make it include something more than, or something different from, what its words express. The context may undoubtedly be resorted to, and often is resorted to, for the purpose of better understanding the meaning of the claim, but not for the purpose of changing it, and making it different from what it is. The claim is a statutory requirement, prescribed for the very purpose of making the patentee define precisely what his invention is; and it is unjust to the public, as well as an evasion of the law, to construe it in a manner different from the plain import of its terms."

The meaning of the words "each bar of a pair being independent of the other" is not doubtful, and there is nothing in the case which justifies its being expunged from the claims. Brookfield v. Elmer Glass Works, 154 Fed. 197, 83 C. C. A. 180. Tested by these well-settled rules of construction, the ultimate question is, in the defendant's structure upon which the charge of infringement is predicated, are the bars

independent of each other? In my opinion, they are not, and, if they are not, the patent is not infringed.

In no sense are the upper and lower arch bars of the defendant's structure independent of each other. They are physically and mechanically connected to each other by exceedingly strong iron fasteners, and, as is shown in the diagram of the defendant's structure, the transverse fasteners of metallic construction which fasten the upper and lower arch bars appear to be considerably stronger and heavier than the arch bars themselves. The connections between the cross-frames and arch bars are direct; that is, the arch bars are directly bolted to the angle iron cross-frames by heavy bolts at the bottom and top, and these bolts are drawn up very tightly, so that the upper bars cannot move perceptibly without producing a corresponding movement in the lower bar, the connection between each upper arch bar and its corresponding lower bar being effected by several iron fasteners called "stirrups." These stirrups are fastened directly into the upper and lower cross-rods, so that the direct connection of the upper and lower cross-rods by means of these stirrups is a connection between the upper and lower arch bars, owing to the fastening of the cross-rods to the arch bars. The result of this arrangement is that each upper bar is firmly connected to the corresponding lower arch bar by angle iron frames at seven different points and by stirrups at ten more points.

That this distinction between dependence and independence must be regarded as material in determining the question of infringement cannot be doubted. The numerous authorities cited fully bear out this view. There is not a single suggestion in the patent itself, or in the history of its prosecution in the Patent Office, upon which a contrary view can be based.

Due consideration in reaching this result has been given to the opinion of Judge Rose in Thacher v. Mayor, etc., of Baltimore (D. C.) 219 Fed. 909, in which the claims in controversy were sustained. The question here involved was not before the court in that suit, as appears from the opinion. The question there involved was mainly one of patentability, and it was held that the patentee had done something which his predecessors in the art had not, and that the difference between the patent and the charged infringement (and which did not involve in any way the dependence or independence of the bars upon each other) was substantially the same as that of the patent in suit.

Let the bill of complaint be dismissed.