**Anthony GIACALONE, Petitioner-Appellant,**

v.

**UNITED STATES of America, Respondent-Appellee.**

**No. 1105, Docket 84–2002.**

United States Court of Appeals, Second Circuit.

Argued April 12, 1984.

Decided July 2, 1984.

Richard A. Greenberg, New York City (Coblence & Warner, New York City, Lawrence M. Herrmann, New York City, of counsel), for petitioner-appellant.

Denise Cote, Asst. U.S. Atty., S.D.N.Y., New York City (Rudolph W. Giuliani, U.S. Atty., S.D.N.Y., Barry A. Bohrer, Asst. U.S. Atty., New York City, of counsel), for respondent-appellee.

Before LUMBARD, MANSFIELD and WINTER, Circuit Judges.

LUMBARD, Circuit Judge:

Anthony Giacalone moved, pursuant to 28 U.S.C. § 2255, or alternatively, Fed.R. Crim.P. 35(a), to vacate a six-year prison sentence imposed by Judge Sweet on December 22, 1980, to be served consecutively to a five-year sentence Giacalone was already serving on an unrelated charge. Giacalone appeals from the denial of the motion. We affirm.

I.

On October 10, 1980, after a seven-week trial in the Southern District of New York before Judge Sweet, a jury convicted Anthony Giacalone and two co-conspirators on numerous counts arising from an alleged conspiracy to embezzle funds from Citibank, N.A., in violation of 18 U.S.C. § 371. On the following day, October 11, Giacalone began serving a five-year sentence imposed in 1979, following his conviction in the Northern District of New York for interstate transportation of stolen goods. Because he was awaiting sentencing for the Southern District conviction, Giacalone was incarcerated at the Metropolitan Correctional Center (MCC), which is adjacent to, and connected with, the Southern District Courthouse in Foley Square.

On the morning of December 22, 1980, Judge Sweet sentenced Giacalone to six years' imprisonment, followed by three years' probation, together with fines totalling $85,000. Giacalone was thereupon remanded to the MCC.

Shortly after 5:00 P.M. on the same day, the United States Attorney alerted Judge Sweet to the fact that he had omitted to state whether the sentence was to run concurrently with or consecutively to the five-year sentence Giacalone was already serving for the Northern District conviction. Judge Sweet thereupon had Giacalone brought into court at about 6:00 P.M. He

informed Giacalone that when he imposed sentence that morning, he had intended to have it run consecutively, but had been unaware that the failure so to specify created a legal presumption that the sentence would run concurrently. *See, e.g., Borum v. United States,* 409 F.2d 433, 440 (D.C. Cir.1967), *cert. denied,* 395 U.S. 916, 89 S.Ct. 1765, 23 L.Ed.2d 230 (1969); *United States v. Chiarella,* 214 F.2d 838, 841 (2d Cir.), *cert. denied,* 348 U.S. 902, 75 S.Ct. 226, 99 L.Ed. 708 (1954); *see also United States v. Wenger,* 457 F.2d 1082, 1083–84 (2d Cir.) *cert. denied,* 409 U.S. 843, 93 S.Ct. 44, 34 L.Ed.2d 83 (1972). However, Judge Sweet stated that he would give Giacalone's retained counsel—who was unable to attend the 6:00 P.M. hearing—an opportunity to be heard prior to the court's filing a corrected judgment specifying that the sentence was to run consecutively.

At a hearing held on January 7, 1981, Giacalone's retained counsel argued that the court's oral correction of the sentence on December 22, several hours after it was originally pronounced, constituted an enhancement of the sentence in violation of the Double Jeopardy clause of the Fifth Amendment. In a memorandum opinion dated January 13, 1981, Judge Sweet directed entry of a corrected judgment stipulating that, consistent with his original intention, the sentence he had imposed on Giacalone was to run consecutively to that previously imposed in the Northern District. Acknowledging that he had "made a mistake of law" in assuming that the sentence initially imposed "would run consecutively by operation of law, without my specifying that such was my intention," Judge Sweet nonetheless concluded that as Giacalone had not yet begun to serve the erroneously imposed sentence at the time the error was discovered and corrected that afternoon, under *United States v. DiFrancesco,* 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980), "no double jeopardy bar blocked this sentence correction."

On direct appeal from the judgment of conviction, Giacalone raised, *inter alia,* his claim that the enhancement of sentence several hours after sentence was first imposed constituted double jeopardy. We affirmed the conviction by summary order, expressly rejecting the double jeopardy claim:

> [T]he double jeopardy clause of the Fifth Amendment was not violated where Judge Sweet recalled Giacalone several hours after imposing sentence to inform him that his sentence was to be served consecutively with the sentence currently being served for another conviction. *United States v. Davidson,* 597 F.2d 230, 230–33 (10th Cir.), *cert. denied,* 444 U.S. 861, 100 S.Ct. 127, 62 L.Ed.2d 83 (1979); *United States v. DiLorenzo,* 429 F.2d 216, 221 (2d Cir.1970), *cert. denied,* 402 U.S. 950, 91 S.Ct. 1609, 29 L.Ed.2d 120 (1971).

*U.S. v. Giacalone,* 659 F.2d 1063, slip op. at 2 (2d Cir.1981), *cert. denied,* 454 U.S. 964, 102 S.Ct. 505, 70 L.Ed.2d 380 (1981).

On March 14, 1983, Giacalone filed a motion pursuant to both 28 U.S.C. § 2255 and Fed.R.Crim.P. 35(a), seeking to vacate his consecutive sentence and reinstate the sentence first imposed. In support of his motion, petitioner asserted, *inter alia,* his double jeopardy claim. Judge Sweet denied the motion by written order on November 30, 1983. Giacalone appeals only from that part of the district court's decision which holds that, as the double jeopardy issue had been raised and considered on direct appeal, Giacalone was barred from relitigating it on a § 2255 motion.

## II

■ It is well settled that a § 2255 motion to vacate sentence "cannot ... be employed to relitigate questions which were raised and considered on the appeal." *Castellana v. United States,* 378 F.2d 231, 233 (2d Cir.1967). *See also Furman v. United States,* 720 F.2d 263, 264 (2d Cir.1983) (per curiam); *Chin v. United States,* 622 F.2d 1090, 1092 (2d Cir.1980), *cert. denied,* 450 U.S. 923, 101 S.Ct. 1375, 67 L.Ed.2d 353 (1981); *cf.* 28 U.S.C. § 2244(c) (absent newly discovered evidence, prisoner cannot raise on habeas corpus state claims already

adjudicated by the U.S. Supreme Court on appeal or by a writ of certiorari).

■ In the instant case, it is undisputed that Giacalone's double jeopardy claim was raised by counsel in the January 7, 1981, hearing before Judge Sweet and on direct appeal of Giacalone's conviction to this court. Giacalone nonetheless argues that the doctrine barring relitigation of an issue on a § 2255 motion is inapplicable here on three grounds: (1) new evidence not considered on direct appeal is now before this court; (2) new authority supports his position; and (3) the double jeopardy claim he raises is sufficiently important to merit disposition by reported opinion rather than summary order. As we conclude that none of these arguments has merit, we affirm the district court's denial of Giacalone's § 2255 motion.

The "new evidence" that Giacalone claims is before this court for the first time is that he had been remanded to the MCC for the few hours that intervened between the imposition of original sentence on December 22, 1980, and its oral correction at 6:00 P.M. the same day. As he asserts that his remand to the MCC commenced the service of his new sentence by operation of law, *see* 18 U.S.C. § 3568, he argues that the "new evidence" of his remand requires the court to grant his double jeopardy claim. *See United States v. DiLorenzo,* 429 F.2d 216, 221 (2d Cir.1970), *cert. denied,* 402 U.S. 950, 91 S.Ct. 1609, 29 L.Ed.2d 120 (1971) (double jeopardy attaches to sentence at moment prisoner commences to serve the sentence); *cf. United States v. DiFrancesco,* 449 U.S. at 134, 101 S.Ct. at 435 (leaving open question whether *DiLorenzo* remains good law).

■ The fact of Giacalone's remand to the MCC following the original sentencing is simply not "new evidence" before this court. First, "new evidence" in § 2255 proceedings, as in Fed.R.Crim.P. 33 determinations, is evidence that is discovered after the original hearing, and which could not, with due diligence of counsel, have been discovered sooner. *United States v. Dukes,* 727 F.2d 34, 38 (2nd Cir.1984);

*United States v. Natelli,* 553 F.2d 5, 7 (2d Cir.); *cert. denied,* 434 U.S. 819, 98 S.Ct. 59, 54 L.Ed.2d 75 (1977); *United States v. Stofsky,* 527 F.2d 237, 244 (2d Cir.1975), *cert. denied,* 429 U.S. 819, 97 S.Ct. 66, 50 L.Ed.2d 80 (1976); *cf.* 28 U.S.C. § 2244(c) (same with regard to evidence newly discovered after Supreme Court review of state conviction). The fact of Giacalone's remand to the MCC was obviously known to both appellant and counsel at all times in the review process. Any belated discovery thus concerned not the fact of the remand, but its possible legal significance to appellant's double jeopardy argument, and would therefore be cognizable in a § 2255 proceeding, if at all, only on a claim of ineffective assistance of counsel. *See infra.*

Secondly, a review of the briefs on appeal from conviction satisfies us that the fact of Giacalone's remand to the MCC following the original sentencing was before this court when appellant's double jeopardy claim was denied. Although appellant's brief did not raise the remand point directly, the government's did. In the five pages it devoted to the double jeopardy issue, the government argued that the rule "permitting trial judges to increase a defendant's sentence so long as the change is made promptly and in defendant's presence" applies "whether or not the defendant is remanded to custody following sentence," citing, *inter alia,* to *Bozza v. United States,* 330 U.S. 160, 67 S.Ct. 645, 91 L.Ed. 818 (1947), a case also involving a defendant recalled from prison for correction of an erroneous sentence. Furthermore, the government stated in a footnote that:

The Supreme Court in *DiFrancesco* declined to comment on the continued validity of the limitation in some of the decisions that once a defendant has "begun" to serve his sentence, it may not be increased. The Court did, however, note that historically trial courts were permitted to increase the sentence of the defendant at any time during the same term of the court. Here, of course, since

Giacalone was already serving another federal sentence on December 22, 1980, he did not "begin" to serve the instant sentence prior to its correction on that same afternoon. 18 U.S.C. § 3568.

Thus, the government's argument on this point put squarely before this court the fact of Giacalone's remand to the MCC, and the very statutory provision on which petitioner relies in arguing that he commenced service of his concurrent sentence upon remand. Therefore, we must assume that in holding that "the double jeopardy clause ... was not violated where Judge Sweet recalled Giacalone several hours after imposing sentence" to correct the sentence, this court considered and rejected the argument that Giacalone's remand to the MCC during those several hours required a different result.

We likewise reject appellant's argument that a change in the law governing double jeopardy since our decision on direct appeal of the conviction entitles him to review of that decision. *See Davis v. United States,* 417 U.S. 333, 342, 94 S.Ct. 2298, 2303, 41 L.Ed.2d 109 (1974). The principal decision on which appellant relies—*United States v. Jones,* 722 F.2d 632 (11th Cir.1983)—is simply another circuit's reiteration, in the wake of *DiFrancesco,* of its established rule that double jeopardy attaches to a sentence at the moment a prisoner begins to serve it. Even if the decision in *Jones* is relevant to the disposition of Giacalone's double jeopardy claim,[1] as *DiFrancesco* itself was decided before Giacalone's direct appeal, and as we are not bound by another circuit's interpretation of *DiFrancesco,* we conclude there has been no intervening change in the law of *this* circuit regarding that claim since we rejected it on direct appeal.

Giacalone's third argument, that the importance of his double jeopardy claim warrants reconsideration in a formal, reported decision, also does not persuade us. Appellant concedes, as he must in light of *Fur-*

*man v. United States, supra,* that the mere fact that an issue was resolved on appeal by summary order does not entitle him to reconsideration of the issue on a § 2255 motion. However, he urges us in our discretion to give full reconsideration here "for the guidance of the Bench and Bar." This we decline to do. The decision of the prior panel to dispose of the case by summary order reflects its judgment that a full written opinion would have served no jurisprudential purpose. We see no reason to reexamine the issue.

■ Finally, we reject appellant's suggestion that if we find that his remand to the MCC is not "new evidence," we should conclude that his counsel's failure to stress the fact of the remand in framing the double jeopardy argument on direct appeal of the conviction was tantamount to ineffective assistance of counsel. It may well have been better strategy if counsel had framed the double jeopardy argument as appellant's new counsel urges. But his failure to do so falls far short of ineffective assistance of counsel in the constitutional sense, *see Trapnell v. United States,* 725 F.2d 149 (2d Cir.1983), particularly in view of the fact that the government's argument put the matter of remand to the MCC squarely before the court. *See Strickland v. Washington,* — U.S. —, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (defendant claiming ineffective assistance of counsel must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different).

Affirmed.

---

1. It would be relevant only if the court accepted that Giacalone began serving his Southern District sentence upon remand to the MCC, but rejected the argument that double jeopardy thereby automatically attached as to that sentence by operation of law.